COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-192-CV

JOSE D. POSADA APPELLANT

V.

ANIVAR SARVELIO ROMERO AND APPELLEES

ENVIROTEC CONSTRUCTION SERVICES, INC. 

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Jose D. Posada presents two issues for review that he phrases as follows: (1) “Whether a physician [sic] status as licensed orthopedic surgeon established physician as an expert on all medical matters and whether counter-affidavits provided sufficient basis for physician’s contravention of chiropractic bills, radiological bills, examining physician bills and costs of orthopedic procedures” and (2) “Whether supplemental report attached to a counter-affidavit, that is not subject to perjury satisfies the statutory requirements of § 18.001(f) of Tex. Civ. Prac. & Rem. Code and whether said report can be considered.”  We affirm.

II.  Factual and Procedural Background

This is the case of the dangerous water hose.  Posada sued Anivar Sarvelio Romero and Envirotec Construction Services, Inc. for injuries to his neck and back that resulted in excess of $17,000.00 in medical expenses.  Posada, who was employed as a laborer by Envirotec, a nonsubscriber under the Texas Workers’ Compensation Act, was injured when a water hose that he was using was stretched across a public roadway and became entangled in the tires of Romero’s trailer when Romero drove across the hose.

On the day that Posada was injured, he was required to wet sod that had recently been planted by Envirotec by stretching a water hose that was hooked up to a fire hydrant across a public roadway.  Posada testified that he was in a small “raven” watering the sides of the ditch with the water hose at the time of the accident.  Posada had been watering the ditch for about twenty minutes when Romero pulled a trailer across the water hose; the hose became entangled in the rear wheels of the trailer, thereby dragging Posada and pulling the water hose from his hands.  Posada testified that the water hose was violently jerked when it became entangled in Romero’s trailer and violently threw Posada to the ground, pulling him backward toward the iron fence that the hose was placed through.  Posada subsequently sued his nonsubscribing employer and Romero for negligence.

At trial, Envirotec argued that there was a flagman who attempted to stop Romero from driving over the hose at a high rate of speed.  On the other hand, Posada testified that he had his back to the roadway and was unable to say whether there were any flagmen who attempted to stop Romero.  Around twenty to thirty minutes after the accident, Posada contacted his supervisor and reported that he was injured.  Posada immediately left work and had a friend transport him to the hospital.  Posada’s attorney introduced and had admitted in evidence, with no objections, the following business record affidavits and affidavits of cost: (1) $1,679.00 in medical expenses from Baylor Hospital at Irving, (2) $77.42 in medical expenses from Phil’s Pharmacy, (3) $193.47 in medical expenses from Irving Radiological Associates, L.P., and (4) $1,495.00 in medical expenses from Texas Imaging and Diagnostic.

Prior to trial, Envirotec filed a counter-affidavit of William Mitchell, M.D. regarding other medical expenses in which Dr. Mitcehll opined that much of the medical treatment received by Posada was unnecessary.  In part, it stated as follows:

The opinions in my report can be summarized as follows: (A) Posada’s treatment by Dr. Laffell and Genesis Chiropractic, totaling $10,842.00, was not reasonable or necessary because (i) physical therapy for six weeks with two visits per week would have been sufficient, followed by a self-directed home exercise program and perhaps over-the-counter anti-inflammatories, (ii) a reasonable charge for six weeks of physical therapy with two visits per week would have cost about $1,800.00, thereby reflecting excessive and unnecessary charges of $9,042.00 by Dr. Laffell and Genesis Chiropractic; (B) Dr. Laughlin’s charge of $2,045.00 was excessive and unnecessary in the amount of $922.00 because (i) the cervical spine and lumbar spine X-rays taken on 9/2/03 and totaling $232.00 had already been performed, (ii) his charges on 9/2/03 of $595.00 for consultation are excessive by $150.00, and (iii) the trigger point injections performed on October 16, 2003 and totaling $540.00 were not necessary and excessive in costs; (C) the $475.00 charge by Dr. Galbraith on 8/14/03 for a detailed exam and NARR-Complex is excessive by almost $225.00; and (D) the $145.00 charge for cervical and thoracic X-Rays taken by Garrett Consulting on 8/21/03 was not necessary as these X-Rays had already been performed.

Additionally, his attached and incorporated report states as follows:

Mr. Posada’s treatment with Dr. Laffell and Genesis Chiropractic was not reasonable or necessary.  He was entirely over treated.  Instead, physical therapy over six weeks (twelve visits at two times per week) would have been sufficient, followed by a self-directed home exercise program and perhaps over-the-counter anti-inflammatories.  Therefore, the charges of $10,842.00 by Dr. Laffell and Genesis Chiropractic were excessive.  A reasonable charge for six weeks of physical therapy, with two visits per week, would have been around $1,800.00, therefore reflecting an excessive and unnecessary charge of $9,042.00.

Dr. Laughlin’s charges were also excessive.  He repeated the x-rays, which had already been performed.  Mr. Posada had x-rays of his dorsal and cervical spine on two occasions and lumbar spine on one occasion, and these were repeated by Dr. Laughlin again.  Therefore, the charges of $232.00 for these X-Rays were unnecessary and excessive.  Also, his charge on September 2, 2003 of $495.00 for the exam was $150.00 more than what it should have been.  Additionally, the charges of $180.00 and $360.00 for trigger point injections on October 16, 2003 were unnecessary.  In sum, Dr. Laughlin had $922.00 in excessive and unnecessary charges.

The $475.00 charge by Dr. Galbraith on 8/14/03 for a detailed exam and NARR-Complex is excessive by approximately $225.00.

The $145.00 charge for cervical and thoracic X-Rays taken by Garrett Consulting on 8/21/03 were not necessary as these X-Rays had already been taken.

Posada testified concerning his treatment from the chiropractor; however, as a result of the admission of the counter-affidavit, the medical records of Genesis Chiropractic documenting $10,842.00 in medical expenses were not introduced into evidence before the jury.  Posada further testified to receiving injections from his orthopedic surgeon, Dr. Laughlin, but Posada was not allowed to introduce the medical records as a result of the counter-affidavit, thereby excluding $2,045.00 in medical expenses.  Also excluded as a result of the counter-affidavit were $475.00 in medical expenses from Dr. James Galbraith and $210.00 in medical expenses from Garrett Consulting.  The total amount of Posada’s excluded medical expenses was $13,572.00.

At a jury trial on the merits, Posada introduced affidavits of costs and business record affidavits previously set forth in the amount of $3,444.95, as well as evidence of $1,920.00 in lost earnings.  The jury returned a verdict in Posada’s favor in the amount of $5,420.00, consisting of $1,920.00 in lost wages and $3,500.00 in past medical expenses, and found that Romero was negligently responsible for the injuries sustained by Posada.

III.  Defendant’s Expert

Posada phrases his first issue as follows: “Whether a physician [sic] status as licensed orthopedic surgeon established physician as an expert on all medical matters and whether counter-affidavits provided sufficient basis for physician’s contravention of chiropractic bills, radiological bills, examining physician bills and costs of orthopedic procedures.”

A.  Counter-affidavits

Posada filed medical affidavits pursuant to section 18.001 of the civil practice and remedies code without complaint as to the procedural prerequisites contained in the section.  
See
 Tex. Civ. Prac. & Rem. Code Ann.
 § 18.001 (Vernon 1997).  Section 18.001 “creates an exception to the general rule requiring expert testimony” to show reasonableness and necessity of medical expenses.  
Rodriguez-Narrera v. Ridinger
, 19 S.W.3d 531, 532 (Tex. App.—Fort Worth 2000, no pet.).  So long as the requirements of section 18.001 are met and the opponent does not file a controverting affidavit, a party may dispense with the inconvenience and expense of obtaining an expert to testify as to the necessity and reasonableness of the expenses. 
 Id.
  

Subsection (f), concerning these controverting affidavits, reads as follows:

The counter-affidavit must give reasonable notice of the basis on which the party filing it intends at trial to controvert the claim reflected by the initial affidavit and must be taken before a person authorized to administer oaths.  The counter-affidavit must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit.

Tex. Civ. Prac. & Rem. Code Ann.
 § 18.001(f).  

B.  Standard of Review

Section 18.001(f) concerns the counter-affidavit in question and is an evidentiary statute.  
See Beauchamp v. Hambrick
, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ).  Evidentiary rulings are reviewed under an abuse of discretion standard.  
City of Brownsville v. Alvarado
, 897 S.W.2d 750, 753-54 (Tex. 1995).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  This court will uphold such evidentiary rulings if there is a legitimate basis for the ruling.  
Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).  

C.  Analysis

Posada initially complains that the counter-affidavit by Dr. Mitchell does not show that he has training in chiropractic care, radiology, medical examinations, or cost overrides of orthopedic procedures, including injections; consequently, Posada asserts that he is not qualified to offer opinions in these areas.

As to the qualifications that Dr. Mitchell posseses to offer his opinions, his affidavit, report, and curriculum vitae indicate that he is a board-certified orthopedic surgeon with staff privileges at five local hospitals, has been in private practice for over thirty-five years, has reviewed the medical records of Posada, and has “[f]or many years, on a regular basis . . . examined and 
treated patients 
who have been injured in auto accidents 
with injuries such as those being claimed by Posada
.”  [Emphasis supplied.]  An examination of his opinions shows that Dr. Mitchell did not criticize the type of chiropractic care given, for which opinion he may or may not be qualified, but rather opined that a reasonable amount of therapy would have been considerably less than that which was given.  

Dr. Mitchell‘s opinion is distinguishable from the expert opinion examined in 
Travelers Insurance Co. v. Wilson
, 28 S.W.3d 42, 48 (Tex. App.—Texarkana 2000, no pet.), cited by Posada, wherein the orthopedic surgeon attempted to criticize the necessity and reasonableness of the chiropractic care itself.  Because Dr. Mitchell has stated that he is familiar with treating the type of injuries that Posada had received, this familiarity would necessarily include the appropriate length of treatment for such injuries, which therefore encompasses his opinions concerning over-treatment by Dr. Laffell and Genesis Chiropractic.  With regard to his other opinions concerning exams, injections, x-rays, and particularly those charges of Posada’s treating orthopedic surgeon, Dr. Laughlin, these are reasonably within the field of expertise of an orthopedic surgeon treating similar injuries.  

Posada also complains that the “reasonable notice” requirement of section 18.001(f) was not met by the counter-affidavit, citing 
Turner v. Peril
, 50 S.W.3d 742 (Tex. App.—Dallas 2001, pet. denied).  
See 
Tex. Civ. Prac. & Rem. Code Ann.
 § 18.001(f).  In 
Turner
, the author of the affidavit “gave no reasonable notice of his basis for challenging the reasonableness and necessity of those expenses.”  
50 S.W.3d at 748.  In this case, however, Dr. Mitchell, who was familiar with treating the type of injuries sustained by Posada, for the most part explained the reasons for his opinion concerning the excessiveness of charges or lack of necessity for the treatment.  For example, with regard to Dr. Laffell and Genesis Chiropractic, Dr. Mitchell opined as follows:

Mr. Posada’s treatment with Dr. Laffell and Genesis Chiropractic was not reasonable or necessary.  He was entirely over treated.  Instead, physical therapy over six weeks (twelve visits at two times per week) would have been sufficient, followed by a self-directed home exercise program and perhaps over-the-counter anti-inflammatories.  Therefore, the charges of $10,842.00 by Dr. Laffell and Genesis Chiropractic were excessive.  A reasonable charge for six weeks of physical therapy, with two visits per week, would have been around $1,800.00, therefore reflecting an excessive and unnecessary charge of $9,042.00.

We overrule Posada’s first issue.

IV.  Supplemental Report 

Posada phrases his second issue as follows: “Whether supplemental report attached to a counter-affidavit, that is not subject to perjury satisfies the statutory requirements of § 18.001(f) of Tex. Civ. Prac. & Rem. Code and whether said report can be considered.”

Section 18.001 of the Texas Civil Practice and Remedies Code allows a claimant to file an affidavit in support of the reasonableness and necessity of medical expenses and services. 
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 18.001.  Likewise, subsection paragraph (f) of that section, previously set forth in this opinion, allows for the filing of a counter-affidavit.  
Id.
 § 18.001(f). 

This court has previously held that when a document is incorporated into an affidavit, the document is treated as if it were written in the affidavit.  
See Dep’t of Pub. Safety v. Mitchell
, No. 02-01-00398-CV, 2003 WL 1904035, at *6 (Tex. App.—Fort Worth Apr. 17, 2003, no pet.) (mem. op.) (citing 
Tex. Dep’t of Pub. Safety v. Struve
, 79 S.W.3d 796, 803-04 (Tex. App.—Corpus Christi 2002, pet. denied)).  In his counter-affidavit, Dr. Mitchell states, “My curriculum vitae is attached hereto as exhibit 1, which is incorporated herein, and it accurately reflects my medical training and experience.”  He also states, “My complete opinion of the medical necessity of such treatment and the reasonableness of the charges is contained in my report, a true and correct copy of which is attached hereto as Exhibit 2, and which is incorporated herein.”  Lastly, Dr. Mitchell states that “[a]ll of the opinions stated in my [c]ounter-[a]ffidavit and my attached report were each based upon my medical training and knowledge, my medical experience, as set forth in my [c]urriculum [v]itae, and upon reasonable medical probability.”  

Clearly, then, the physician’s report is incorporated into his affidavit and is therefore treated as if written in the affidavit.  We overrule Posada’s second issue.

V.  Conclusion

Having overruled Posada’s issues, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and MCCOY, JJ.

DELIVERED: April 26, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.